Good morning, and may it please the Court, my name is Carl Hennis, and I represent the appellant Willie Frank Jackson. In this case, the Court must decide whether 15 months was an unreasonably long time for Jackson to wait for a decision from the Texas Court of Criminal Appeals. Jackson's wait was not unreasonable, and in fact, Jackson's decision to contact the Court after 15 months shows diligence for three reasons. First, it is difficult for anyone, but especially for a pro se prisoner like Jackson, to predict how long it will take a court to reach a decision. Second, the Texas Court of Criminal Appeals was required to send Jackson notice so Jackson could reasonably expect to be notified once the Court did reach a decision. The State's brief says, quote, this Court, meaning Fifth Circuit, has never granted a petitioner equitable tolling following a 15-month delay in inquiring about the status of a State habeas application. Would you address that directly as to whether it's true, and if it's true, how that affects your case? It is true, Judge Smith. This Court has never addressed these specific facts. But that — so this case is most analogous to this Court's decision in Hardy v. Quarterman, a case that we discuss at length in our briefs. And at — Hardy involved an 11-month delay before the petitioner reached out to the Texas Court of Criminal Appeals for the first time. And at the time that this Court decided Hardy, it had not addressed a case in which a petitioner's initial 11-month delay had been sufficient to demonstrate diligence. Also, I certainly understand what you're saying, but it seems to me that length of time itself may be too much. Five years before you check, three years before you check. And so there's some sort of upper limit, it seems to me, to just delay. And why isn't this that limit? Why is it enough? Is it so long as he's diligent beforehand, diligent after, patience on the part of the inmate will always be forgiven? Is that — and he just waits indefinitely? Well, I think there is a limit, Judge Southwick, and — How do we know when we get there? How do we know we're not there? The lucky thing is that I don't think we need to set the limit in this case. The Supreme Court in Holland said that we need to look to similar cases for guidance, and that's similar to what this Court did in Hardy, where this Court looked to analogous Fifth Circuit precedent and it looked to time periods found to be reasonable by other circuits. And after considering those, it found that the Petitioner acted diligently. So when we look at those same sources in this case — and I'll get to them in a second, but those sources support finding that a 15-month wait is still diligent. Now, I agree that there is probably a line somewhere. And in Hardy, this Court characterized its prior decision in Lewis, which involved a two-and-a-half-year delay, as an extreme delay. And we would concede that at some point an extreme delay would warrant a district court denying equitable tolling. But in this case, this is really analogous to this Court's decision in Hardy and to the Ninth Circuit's en banc decision in Fway and to the Eleventh Circuit's decision in Knight. So I don't think that this case requires drawing the line. At some point it might down the road, if a Petitioner waits longer, and that will present some close questions. But in this case, this is right in the heartland of those other cases. And in particular, the Ninth Circuit's en banc decision in Fway is really very similar. There, the Petitioner waited 14 months before contacting the tech or the — excuse me, the California Supreme Court. The California Supreme Court, like the Texas Court of Criminal Appeals in this case, had a rule that it would promptly notify all parties once it reached a decision. And in that case, the Petitioner was also proceeding pro se, like Jackson was in this case. And the Ninth Circuit found that a 14-month wait before contacting the state court actually showed diligence, given the California Supreme Court's don't call us, we'll call you policy. And those same two factors, a pro se prisoner and a court rule that requires the Court to send notice, were two factors that this Court relied on heavily in Hardy. And they're also two factors that the Eleventh Circuit relied on heavily in Knight. And in fact, if this Court found that Jackson was not diligent, if this Court draws the line at 15 months, it would actually be the first court to do so. In the Eleventh Circuit's Knight decision, like I said, the same two factors were at play. It was a pro se prisoner, which it's difficult for a pro se prisoner to predict when a court will reach a decision. And that Petitioner had received assurances that he would be notified as soon as he did, as soon as the Court did rule on his petition, just like the Texas Court of Criminal Appeals in this case was required to. And the delay was even longer in Knight. In Knight, the delay was 16 months from the Court's decision until his first inquiry. So the delay was even longer between the initial filing of the State habeas application and the final or the first inquiry by the Petitioner in Knight. Kennedy. Was your client told at the time of filing or in some way that you will be notified by the Court of Criminal Appeals when a decision is made? What was his, what's the evidence in this record about what he had been told or otherwise knew about the practice? I don't know that there's any evidence in the record that he was told anything affirmatively. But there is obviously evidence that the Texas Court of Criminal Appeals is required to send notice, and that's Texas Rule of Appellate Procedure 77.4. And on page 114, or excuse me, 115 of the record, in his objections to the report and recommendation, Jackson says, I was waiting patiently. And that's the difficulty in any of these cases, is that the same conduct, doing nothing, is perfectly consistent with both sleeping on your rights and it's perfectly consistent with being diligent and waiting patiently for a court's decision. And that brings me to my next point, is if it's consistent with two different things, you know, what else do we look at? Well, let's look at Jackson's diligence both before the extraordinary circumstance and after the extraordinary circumstance. And in this case, there can be no question that when Jackson knew the clock was ticking after his conviction became final and once he finally received notice from the state court, he acted quickly to protect his rights. Even after he received the adverse judgment from the district court in this case, Jackson filed his notice of appeal just five days later. Every other indication is that Jackson moves quickly to address his habeas rights. And that's consistent with the fact that Jackson has a huge incentive to do so. He is in prison for 90 years and he has an incentive to try to get out. He has a motivation to try to get out. And every action that he has taken in this case backs up that motive. So I think that's why it was the Second Circuit in Diaz, they say, we're only going to impose a duty once a substantial period of time has passed. We're going to give a pro se prisoner who's entitled to notice a little bit of a benefit of a doubt before we impose a duty on them to flood the state courts with inquiries about the status of their case. Besides Hardy, this case is also analogous to this court's decision in Coker. In Coker, the petitioner inquired first after eight months and then he waited just a little bit over a year and inquired again. So he had two inquiries with just under 20 months. Jackson, in this case, has two inquiries in just over 20 months. So it is also analogous to Coker. And I think one of the biggest issues is that the district court didn't rely on any of these similar cases for guidance. The district court only relied on a single case and that was another report and recommendation and it was also called Jackson v. Davis, a different Jackson and the same Davis. And that case also involved a 15-month wait. But besides that 15-month wait, that case has nothing in common with this case. In that case, the 15-month wait was because the petitioner forgot to update his address with the Texas Court of Criminal Appeals. So it was his lack of diligence that caused the delay in the first place. That petitioner waited for 330 days before he even filed his state habeas application. So he had let almost the entire statute of limitations run. And even after receiving notice, that petitioner waited four more months before filing his federal habeas petition. So even in the absence of, even with equitable tolling, the statute of limitations in that case would have run. The cases that are on point, Fway, Knight, the Knight Circuit decision in Wazar, and this court's decision in Hardy and Coker, all support finding that Jackson acted diligently in this case. Therefore, we ask the court to reverse the district court and to remand this case for a consideration on the merits of Jackson v. Davis. Thank you. Roberts. Thank you, Mr. Hannis. We'll save time for rebuttal. Mr. Chidema. May it please the Court. Jackson fails his burden to show that the district court clearly erred and abused its discretion in denying Jackson equitable tolling based on his lack of due diligence in pursuing his state habeas application. The timelines in this case fall neatly in the gray area between two guidepost cases, that is, two published Fifth Circuit cases reaching opposite conclusions based on differing levels of the petitioner's diligence. This gray area between the two cases presented the district court with the time frame where it just had to make a judgment call. And that's what the district court did. It exercised reasonable discretion given the precedent before it. Let me ask you a question preliminarily, though. What is the rule in the Texas Court of Criminal Appeals that imposes the obligation to give notice? Is that a statutory form or what form is that? Yes, Your Honor. Everyone who concedes there had an obligation. What is the source of that? What is the source of the rule? Of the obligation to give notice? There is a statute saying that the clerk of the CCA must mail copies of the opinion or order to the parties. It's a Texas Code of Appellate Procedure 77.4a. Why isn't a prisoner entitled to rely upon the stated law and rely on the fact that the Texas Court of Criminal Appeals will follow the law? The inmate is entitled to rely on it to some degree. But that doesn't excuse the inmate from checking up on his case if his case goes dormant or he doesn't hear for a long time, in this case, 15 months. I understand that. But all I'm suggesting to you in this calculation of the equitable bite of this rule, what does equity look to, I suggest to you the starting point is that the Texas Court of Criminal Appeals has a statutory obligation to give notice and that a prisoner is presumably entitled to rely upon the law of Texas. And, no, that doesn't end the matter of equity. That doesn't end the inquiry. But I don't see a lot of discussion about the force of that rule. Well, Hardy does discuss that that imposes an obligation on the State. But that's not quite the same thing what happened in this case. The record here shows that the CCA actually did. Well, you can see that the second, that they did send a notice eventually, but that one was not received. And I don't hear a challenge to the prisoner's assertion that he never got that notice. No, we don't dispute that he never got the notice. But we do dispute that the CCA. And the fact is that when he finally got the notice on January of 2018, within, what was it, 17 days, he filed his petition. Yes. It took him 17 days when he finally got the notice. That's a beginning point, isn't it? Well, we agree at that point he was diligent. But that's not the important point here. The point here is— He was diligent there. What should he have done? He should have checked up on his case earlier than 15 months instead of sleeping on his rights, which this Court has specifically said that he should not do. He sat for 15 months. If you don't hear— When should he check? When did they determine that the Texas Court of Criminal Appeals is not following the law? I'm sorry? When does the President determine that the Texas Court of Criminal Appeals is not following the law and that he should check to find out? Well, we think he should be checking annually. And that's what the case law supports here. That's what the case law supports. How long is it? When is he barred? At what point? Can you give me some suggestion about that? When is he barred? Well, as he was barred here. We think he's barred after a year. When? After a year. And we would make that suggestion based on— within nine months. And my colleague says 11 months, but Hardy actually inquired the first time within nine months. And if you look at Stroman, he waited—the length of delay in his case that was determined was an 18-month period. So it's somewhere between 9 and 18 months based on these two precedents. If you kind of split that, about a year is the time frame we're looking at. And that particularly makes sense when we're talking about a year-long statute of limitations. If you don't hear from your case in a year, you should be concerned that your statute of limitations may be at stake. And that's when a diligent petitioner should be checking in on the case. We have two laws. One's a one-year bar for the prisoner, and another is that the Texas Court of Criminal Appeals is supposed to give notice. And so if the Texas Court of Criminal Appeals doesn't follow the law and give notice, the prisoner will be barred at the end of a year. They're not barred. They're just — they have an obligation to stay in touch with their case. But the effect of it is to bar them. He cannot proceed with habeas — the pursuit of habeas relief. Sure he can. He can file inquiries like Hardy did. And — But it just seems perverse to me that a prisoner has got to monitor the Texas Court of Criminal Appeals to see it does it. It's one thing to say that, you know, if they'd had no obligation to give notice. Once you start with that — to me, notice counts in a large way. He filed this 14 days after he got notice. Seventeen days. Sure. And he was diligent there. But the court's — the previous precedent in this court says that we not only look at the last part of the case, we look at the middle part of the case. And that's where the problems arise in this case. He sat on this case for 15 months. He didn't hear anything for 15 months. He was off by three months by the heart of the — he was — he was — he waited three months longer than he should have. Because you should have said nine months is okay. Yes. It is a close call. There's no — no doubt that this is kind of falling in this gray area between the two cases. Where do we find in the sky that three-month period? He's barred at nine months, but not three. I mean, where do you come up with that, other than an advocate's argument? It's based — it's based on the best guidance we have from the precedent we have. And like I said, I get that from Stroman and Hardy, which are the best cases we have. They're under very similar circumstances, this case. And the timelines fall in between those two cases. And we're looking at abusive discretion standard here. And given those two cases, the district court had to make a decision and had to exercise its best judgment. There's just no precedent for finding that the district court clearly erred in making its diligence determination. And to your point that the CCA shouldn't violate its own law, it didn't in this case. The CCA complied with the law. It mailed notice. The problem here seems to be more of a problem in the Postal Service than it does with the CCA. And that is a distinction that's present in this case that was present. Well, they did, but you can see that he didn't get it. And so what I'm saying to you is that I'm not faulting the Texas Court of Criminal Appeals here. I'm looking at it from the eyes of the prisoner, that he didn't get it. He never got it. And he's relying upon the obligations of the State to do it, that they did it and didn't get it. It's something else. That's my point. And certainly we sympathize with that concern, but there also has to be an upper time limit on when and how long a petitioner may sit before it can check on his case. Was the Texas Court of Criminal Appeals denied in July of 2016? And when did they send out the notice? They sent notice the same day. The record showed that they sent it on that day, as they should? Yes. And that's in the record. Let me ask you about this case that you say sets the range, if I understand it, Mr. Strohman. Your opposing counsel has addressed that. It does seem to me that this is, insofar as diligence, that the inmate has only a certain level of control over what he can do. And this inmate has shown, both at the beginning of the time period or the overall time that we're talking about, and at the end, he showed extraordinary diligence for an inmate. And so his problem was patience. And for 15 months, he was dealing with not hearing from the court. I'm trying to think of what opinions I may not have written within a 12-month period, and sometimes that happens. But in Strohman, you don't have that other kind of diligence going on by the inmate. More than seven months, the limitation period elapsed before he filed his state filing. He made his first inquiry, then waited an additional 18 months. And then he waited seven weeks after receiving notice to file his federal habeas. It seems to me it is a mix. It's an overall context for how the inmate has acted. And I don't want to quibble about the time limit. I do think a fair way to look at Hardy is that that was 11 months. You say nine, but regardless, I don't think there are bright lines here. You want us to create a bright line to say that 12 months is it. And I see nothing that makes that a legitimate place to put a line. This is an overall mix of the validity of the actions, the reasonableness of the actions on the twin considerations we're supposed to have in whether there's some extraordinary circumstance here and whether it's diligence. And I'm sympathetic, as I first raised with the opponent, that there ought to be some upper limit. That this just can't go on forever. But I have a hard time saying that it's just a month longer than Hardy says or three months, four months, if that's the right way to calculate it. And I don't think Stroman sets an upper limit. It shows an overall lack of diligence, it seems to me, much greater than Jackson has. I guess those are observations. If you see a question there, you can respond. But I guess that's what I'm asking. What do you make of all of that? Well, first off, I would say we're not proposing a bright line rule. Clearly, that's forbidden by law. Aren't you? Aren't you saying 12 months? We're suggesting that as a guideline for petitioners. Obviously, every case has its own circumstances, and you should take in all the circumstances of that case.  statute of limitations. We've provided in our 28-J letter statistics showing that the CCA is relatively quick about deciding state habeas applications. On average, they decide them in about 40 days. And given those two facts, a year would be a good approximation of how often somebody should check up on their case. But here we're talking about 15 months. And, yes, we don't dispute that Stroman is less diligent than Jackson. But there are signs of Stroman that he was more diligent in some instances. For instance, Stroman checked in on his case only 10 months after filing his state habeas application. Jackson didn't check in until 15 months. And, moreover, Stroman, after checking in in 10 months, he got a reply telling him that his case was still pending, which it was. So really, in Stroman's case, it comes down to that 18-month timeline. Although Stroman was a little less diligent on the other ends of his case, it's really about that 18-month period. And this is pretty similar. We're talking about the difference between 15 and 18 months. And we think 15 months is — does show a lack of diligence. It does constitute sleeping on your rights. It's not difficult for a petitioner — a prisoner to mail to court and conduct a inquiry. Now, Jackson claims that Hardy firmly forecloses this case in his favor. But, again, we emphasize that Hardy checked in for the first time after nine months, and again after two months, and a third time two months after that. So three times inside 14 months, Hardy had checked in on his case. That's far more diligent than Jackson was. And if you juxtapose Stroman and Hardy, you can see this gray area develop where we don't have any definite answers in the law as to what diligent inquiry is for an inmate who does not receive notice as to the disposition of a state habeas case. And it's because of this gray area that the district court deserves deference from this court. And this court is obligated to give the district court deference. But even if you disregard that deferential standard review, even if you apply a de novo standard here, we think a 15-month delay is simply not diligent. Now, Jackson cites a number of out-of-circuit cases. I want to briefly address that. He cites two Ninth Circuit cases and an Eleventh Circuit case.  The Ninth Circuit is explicitly applying a de novo review. And his primary out-of-circuit case he's talking about, Flay v. Knight, even that court struggled with whether a 14-month delay was too much. The circuit panel in that case actually found that not to be diligent, a 14-month delay. It took an en banc court to reverse that under de novo review. Additionally, that court declared that 14 months is not an unusually long time to wait for your case to be decided. And the statistics we've provided to this court show that's just not true in Texas. I don't know if that's true or not in California, but it's definitely not true in Texas. CCA is deciding its cases relatively quickly and has been doing it that way for well over a decade at this point. Now, Jackson also suggests that he was just waiting patiently and didn't want to flood the state with inquiries. Checking in on your case once a year is not flooding the state with inquiries. I don't think that's going to be a problem for the courts. And waiting 15 months is not just being patient. That's excessive. It's sleeping on your rights. If the Court has no final questions, we conclude in asserting that waiting 15 months simply is not diligent behavior, and there is no precedent for finding that the district court clearly erred in its diligence determination. This Court should affirm the district court's decision. Thank you. Thank you, Mr. DeMa. Mr. Hennis, you've saved time for rebuttal. I want to address first the suggestion that there be a one-year bright line time rule for checking in with your case. Both this Court and the Supreme Court have made this suggestion. Who has suggested that? I believe my colleague did. I heard him just say in the answer to a question that he's not proposing a bright line. What I heard him say was that one year is a good guideline. Well, I think earlier when Judge Higginbotham asked him how often you should check in, he said annually. Well, and he was asked later whether he's proposing a bright line, and he said that he was not. And then he continued by saying one year is a useful or a good guideline. That's what I heard him say, and I wrote it down. Whether it's a guideline or a bright line rule or a suggestion, it's foreclosed. First of all, it's foreclosed by this Court's precedent. In Coker, the Petitioner's second and third inquiries were each a little over a year. So anything right at a year is not applicable because this Court found that Coker acted diligently despite twice waiting a little bit over a year. And any kind of annual requirement, there's just no statute that says there's a one-year requirement or anything close to that. There's a statute that says that the Texas Court of Criminal Appeals has to send notice, but there's not a statute that says that you have to inquire after this amount of time. Second, regarding this gray area in between Hardy and Stroman, I think that it's inapplicable for two reasons. A, as Judge Southwick, I think, pointed out, the amount of diligence that Stroman exercised in filing his initial state habeas application, which took him seven months, and then in filing his federal habeas petition, once he actually received notice, was another seven weeks. So Stroman was much less diligent than Jackson in that sense. And I think it's also important to remember that the 18-month delay in Stroman was his second inquiry to the Texas Court of Criminal Appeals, not his first. And the whole point of drawing a line anywhere is that at some point, it becomes more likely as time goes on that the Court has not received your decision. So if anything, a first inquiry should be more forgiving and requiring more frequent follow-ups after that. JUSTICE SCALIA. Counsel, my biggest problem with your argument is our abuse of discretion standard to hold that the district judge had to rule in your favor, as opposed to having discretion to weigh the sort of uncertainties in our case law as to what a proper time is. There was an analysis of why this was too long, and we can determine whether we necessarily agree with the reasoning or not, but there still is discretion, and we're not making a de novo decision. Is that a fair statement? MR. ZUNIGA. That's fair, but the district court, you know, when my colleague was talking about the gray area in between Hardy and Stroman, the district court didn't mention any of that. The district court didn't make an analysis based on anything except one report and recommendation that is almost completely irrelevant to the facts of this case. And the Supreme Court in Holland made clear that courts have to exercise their judgment based on prior precedent. Even though equity is a case-by-case analysis, we still want some, you know, consistency and predictability. So, really, all we're asking the court to do is to do what it did in Hardy, is to compare this case to analogous Fifth Circuit precedent, Hardy and Coker, compare it to time periods found to be reasonable by other circuits, and that's 14 months in Fway, that's 16 months in Knight, and find that because Jackson was a pro se prisoner and because the Texas Court of Criminal Appeals was required to give him notice, he acted diligently by inquiring into the court 15 months after filing his federal habeas petition, or excuse me, his state habeas application. And, again, we ask you to reverse the district court as this court did in Hardy and remain for consideration on the merits. Thank you. All right. Thank you, Mr. Hennis. Your case is under submission, and the court expresses its thanks to you and to Mr. Eskridge and to Queen Emanuel for your willingness to take this case pro bono. All right. Last case of the day, Gleason v. Markle.